IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Stanley Clowney,<br><br>                  Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of<br>Social Security,<br><br>                  Defendant.<br>_____ | Civil Action No.  8:07-856-CMC-BHH<br><br><br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Stanley Clowney, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration regarding his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 49 years old as of the alleged date of disability making him a "younger" individual. (R. at 17, 238). The plaintiff has an eighth-grade education and has relevant past work as an auto mechanic, knitting machine fixer, salad bar attendant, and grocery store stocker. (R. at 17, 82-92, 100, 105, 238-240.)

The plaintiff filed an application for SSI on December 10, 2002, alleging that he became disabled on March 9, 1995, due to neck, shoulder and mild lumbar pain. (R. at 16, 18, 241.) The plaintiff's application was denied initially and upon reconsideration. (R. at

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

16, 26-31, 33-37.) A hearing was held before an Administrative Law Judge (ALJ) on January 11, 2005. (R. at 16, 234-44.) At the ALJ hearing, plaintiff amended his onset date to December 10, 2002. (R. at 16, 237.) In a decision issued on April 23, 2005, the ALJ found that plaintiff was not disabled. (R. at 16-20.) The Appeals Council denied the plaintiff's request for a review of the ALJ's decision, (R. at 4-6), thereby making the ALJ's second decision the Commissioner's final decision for purposes of judicial review.

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date of disability.

2. The claimant's neck and shoulder pain, and mild lumbar pain with cervical x-rays showing only slight straightening with sell preserved disc spaces are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(c).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant has the following residual functional capacity: he can perform light exertion work.

6. The claimant is unable to perform any of his past relevant work (20 CFR § 416.965).

7. The claimant was a "younger individual" on his amended onset date (20 CFR § 416.963).

8. The claimant has a limited education (20 CFR § 416.964).

9. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

10. Considering the claimant's ability to perform light exertion work, medical-vocational rules 202.11 and 202.18 direct a finding of "not disabled."

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time from through the date of this decision (20 CFR § 416.920(g)).

(R. at 19.)

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner

may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to properly assess his subjective complaints of pain; (2) failing to properly consider evidence of the plaintiff's physical and mental impairments in determining the plaintiff's residual functional capacity ("RFC"); (3)

failing to find that the plaintiff's mental impairments meet the criteria of Listing 12.05; and (3) applying the medical-vocational guidelines to conclude that the plaintiff was disabled. The Court will address each alleged error in turn.

## I.    THE PLAINTIFF'S CREDIBILITY

The plaintiff first contends that the ALJ failed to properly assess the credibility of his subjective complaints of pain.   Specifically, the plaintiff alleges that the ALJ focused on irrelevant or improper considerations in concluding that the plaintiff was not fully credible, including a lack of objective findings.

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations.  *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996).  Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is **a two-step process**."  *Id.* at 594 (emphasis added).  First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* at 591 (quotation and emphasis omitted).  This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain."  *Id.* at 594.  Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated."  *Id.* at 595.  When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted.  *Id*. at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ."  *Id.* at 593.  Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's

subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

It is easily concluded that the ALJ did not conduct the analysis as prescribed. Most critically, the ALJ did not consider the threshold inquiry whether or not the plaintiff's impairments could reasonably be expected to create the symptoms alleged. The ALJ did not discuss whether the plaintiff's severe impairments of neck and shoulder pain and mild lumbar pain could be expected to produce the limitations alleged by the plaintiff and rejected by the ALJ as not credible. (R. at 18.) The defendant admits as much. (Def. Brief at 12.) This error alone justifies remand. *Craig*, 76 F.3d at 596 (finding that when the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted).

Moreover, the ALJ's actual reasons for discounting the severity of the plaintiff's alleged limitations, at step two, are not persuasive or specific. The ALJ dismissively noted that most of the medical evidence since December 2002 consisted of consultative examinations and evaluations; found that a Dr. James Ruffing had made no psychological diagnosis; and speculated that Dr. Ira Gordon Early, an examining physician, was "uncomfortable concluding that the claimant [was] disabled." (R. at 18.) None of these considerations actually speak to "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated" and are, frankly, speculative. *Craig*, 76 F.3d at 595. Of course, whether or not any psychological diagnosis was made has no bearing on the plaintiff's alleged physical limitations and pain.

The ALJ summarily concluded that the plaintiff's complaints were not supported by the objective medical evidence. (R. at 18.) It is certainly proper and necessary for the ALJ to consider the strength of the objective findings in making his credibility determination. Specifically, such an evaluation must "take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history . . . any *objective medical evidence of* pain and any other evidence relevant to the severity

6

of the impairment, such as the claimant's daily activities . . . ."  *See Craig*, 76 F.3d at 595 (emphasis added).  The ALJ, however, has not expressly explained how he concluded that the objective evidence does not support the plaintiff's subjective complaints.  He made no specific analysis at all.

By contrast, the plaintiff has put forward evidence that his alleged pain and limitations are supported by the objective evidence.   In 1996, Dr. Robert Wentz noted he had decreased range of motion, strength, and functional mobility (R. at 128), with paravetebral muscle spasm of the cervical and thoracic spine (R. at 131).  In March 2003 Dr. Early noted that "his posture is consistent with that of a person with a lot of neck and back pain." (R. at 149.)  The plaintiff could only forward flex about 30° and extend about 45° from neutral, his neck was tender, and he had 2 tender bumps at the nape of his neck and at C7.  *Id*.  His right upper extremity was significantly smaller than the left, with mottling and spasticity.  (R. at 150-51.)

In 2005 Dr. Early noted neck and shoulder pain with a significant decrease in range of motion in the neck — he had the ability to flex 30° and extend 20° from neutral, and rotate 30° in either direction with discomfort — and in the shoulder since his last exam and a decreased ability to grip with both arms.  (R. at 162-64.)  Dr. Early further noted that the plaintiff was unable to squat, "a little slow in fine motor movements in the hand," and that his grip strength was decreased on the right and the left.  (R. at 164.)

While the ALJ reviewed much of this evidence (R. at 17), he did not assess it in any specific way concerning the plaintiff's credibility such that the Court could review it.  Accordingly, the ALJ on remand should perform the credibility analysis as prescribed and make express his analysis.

## II.    RESIDUAL FUNCTIONAL CAPACITY

The plaintiff next contends that the ALJ failed to accept the physical limitations recommended by Dr. Early in 2005, which restricted the plaintiff to sedentary work because he was going to have a "hard time with prolonged standing and walking," using and

7

controlling his left arm, moving his neck, and reaching. (R. at 163-64, 167.) Dr. Early also indicated that the plaintiff would have trouble working with tools greater than 10 or 20 pounds in his right hand and would have to change postures "as needed." (R. at 167.)

The ALJ instead relied on the 2003 assessment of a non-examining state agency consultant. (R. at 18.) The Court agrees with the plaintiff that the ALJ's consideration of Dr. Early's recommendation, consistent with the decision in general, is conclusory at best. In the context of his credibility analysis of the plaintiff, the ALJ summarily states that Dr. Early's opinion "only suggests that the claimant is limited to sedentary work, and then only in January 2005." (R. at 18.) There is no actual explanation for why he disagrees with Dr. Early's assessment. Without at least a modicum of discussion, the Court cannot make any informed decision as to whether the decision to reject Dr. Early's recommendation rests on substantial evidence.

To the extent the defendant has attempted to justify the ALJ's decision in hindsight, such post-hoc rationalizations will not be entertained. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ."). The reasoning advanced by the defendant now, is not reflected in the four page decision of the ALJ. As between the weight to be given to the relative opinions of the state agency consultant and Dr. Early, the Court would not interfere. Rather than reweighing the evidence, the Court is simply requiring the ALJ to articulate a reviewable basis for rejecting the recommendation of Dr. Early.

The Court may not otherwise be inclined to remand for this reason alone, but the decision is thin enough in regards to Dr. Early's opinion that it is appropriate and not unduly

burdensome for the ALJ to give it more specific treatment, in the context of his reconsideration of the plaintiff's credibility regarding some of the same limitations.

### III.   MENTAL IMPAIRMENTS

The plaintiff also complains the ALJ did not consider evidence of the plaintiff's mental impairments, including I.Q. scores from 1969 that show the plaintiff performing in the bottom 1 percentile. The Court, however, agrees with the defendant that the plaintiff did not allege low intellectual functioning as a disabling or even limiting impairment. (R. at 31, 37, 69.) The plaintiff summarized his impairments as follows: "I have neck and back pain plus I have arthritis in my knees and elbows. Dr. Clark say [sic] I have spinal rhomatoic and arthritis also." (R. at 69.) In response to the Disability Adult Report question "what are the illnesses, injuries or conditions that limit your ability work?," the plaintiff answered: "One doctor said I have a cervical neck or never injury. The other doctor said I have spinal arithritis. . . . My neck and back, my knees are sore can't get on my knees, my elbow stay sore." ( R. at 99.)

Critically, at the hearing before the ALJ, the plaintiff's attorney elicited no testimony concerning low intellectual functioning. (See R. at 234-43.) In fact, the plaintiff's attorney confirmed that the plaintiff "could read some" and remarked only summarily that the plaintiff was better off "stay[ing] away from the books, and sort of stick[ing] with the gages." (R. at 238.) Nothing about the plaintiff's testimony or counsel's line of questioning would have suggested to the ALJ that the plaintiff believed he was disabled, in part, on account of his level of intellectual functioning.  *See Norris v. Barnhart*, 152 Fed. Appx. 698, at *4 (10 th Cir. 2005) ("[T]he only impairments claimant raised in his application for benefits were neck and arm pain; he did not make any complaints related to the abnormalities [detected in his lumbar spine and sinuses] to Dr. Odor, and he provided no testimony at the hearing about the abnormalities or that they functionally limited him in any way.") The Court does not believe that the ALJ can be charged with error for not considering an impairment the plaintiff himself declined to raise, emphasize, or argue. *See* 96-8p; *Matthews v. Bowen*, 879 F.2d

422, 424 (8th Cir.1989) (finding no error where ALJ failed to order consultative examination before concluding claimant had no mental impairment where claimant "did not allege that she was disabled due to any mental impairment" and presented only minimal evidence on issue); *Moore v. Astrue*, 2008 WL 216605, at *4 (D.S.C. January 24, 2008). The plaintiff has provided no legal authority to the contrary.

The plaintiff does argue that the ALJ was required to make an evaluation of how the plaintiff's mental impairment impacts four functional areas, including activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3-4)(2007). The plaintiff, himself however has not directed the Court's attention to any evidence from which the ALJ could have concluded that the plaintiff's alleged mental impairment diminished his ability in such areas. It is ultimately the plaintiff's burden of establishing he has a mental impairment severe enough to render him unable to engage in substantial gainful employment. *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir.1986). The ALJ has "no duty to investigate" conditions not raised by the plaintiff. *Norris*, 152 Fed. Appx. at *4. The error, therefore, if any by the ALJ, was harmless, to the extent the plaintiff has not put forward evidence that the outcome would have been any different. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error").

For these same reasons, the ALJ committed no error in failing to consider whether the plaintiff met Listing 12.05(B) or (C) (Mental Retardation).[2]

---

[2] Section 12.05 of Appendix 1 to 20 C.F.R. § 404, Subpart P. Section 12.05 states in relevant part:

> 12.05 Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22) . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .

10

**IV.    MEDICAL VOCATIONAL GUIDELINES**

Lastly, the plaintiff contends that he suffers from non-exertional impairments, including limitations to his ability to push, pull, balance, stoop, kneel, crouch, crawl and climb, which should have precluded the ALJ from relying on the medical-vocational guidelines ("Grids") to find the plaintiff disabled. It is true that where a claimant suffers both nonexertional and exertional impairments the ALJ may not rely exclusively on the Grids and, instead, must procure vocational expert ("VE") testimony. *See Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir.1987).

The guidelines provide an ALJ with administrative notice of classes of jobs available in the national economy for persons who have, among other things, certain disability characteristics such as strength or exertional limitations. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2 §§ 200.00-204.00. However, "[t]he guidelines do not take into account nonexertional limitations such as pain, loss of hearing, loss of manual dexterity, postural limitations and pulmonary impairment." *Coffman*, 829 F.2d at 518; *see also Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir.1983). Therefore, "[w]hen nonexertional limitations . . . occur in conjunction with exertional limitations, the guidelines are not to be treated as conclusive." *Coffman*,829 F.2d at 518; *see also Roberts v. Schweiker*, 667 F.2d 1143, 1145 (4th Cir.1981); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a), (d)-(e)(2); 20 C.F.R. § 404.1569a. Where there exist exertional and non-exertional limitations, the guidelines are simply not conclusive.

---

> B.  A valid verbal, performance, or full scale IQ of 59 or less;
>
> C. A valid verbal, performance, or full scale I.Q. of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitations of function;
>
> . . .

11

The defendant argues, however, that when the non-exertional limitations "would add nothing to the fact of disability," SSR 83-14, then the ALJ may look exclusively to the exertional limitations and apply the Grid Rules conclusively and not simply as a framework. *See* 20 C.F.R. § 404.1569a(d) ("If your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength and demands of jobs other than the strength demands, we will not directly apply the rules in appendix 2 unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations . . . ." (emphasis added)); *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Ortiz v. Sec'y of HHS*, 890 F.2d 520, 524 (1st Cir.1989) ("If a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability.").

The Court need not resolve the matter as a result of its rulings on other objections to the ALJ's decision. The ALJ will necessarily have to revisit the applicability of the Grids after he reconsiders the credibility of the plaintiff's subjective complaints of pain and Dr. Early's opinion as to the plaintiff's limitations.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ' s decision to deny benefits was supported by substantial evidence. It is, therefore, RECOMMENDED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

May 23, 2008
Greenville, South Carolina